We'll now hear Sheeran v. Structured Asset Sales. Make sure it's still morning. Good morning. May it please the Court, my name is Hillel Parnas. I represent the appellant movement, Structured Asset Sales. I wanted to briefly make two points at the outset to make sure that the Court has them in mind. One is procedural and the other is substantive slash practical. The procedural one is in full view at pages 66 and 62 of the record. At page 66, then District Judge Sullivan's rules appear, and they make very clear when one wants to make a motion, what steps one has to follow and what one is not allowed to do. No party shall submit a reply letter. Affidavits and exhibits are not permitted in connection with pre-motion letters without prior written request and permission. I was a non-party seeking to intervene, and I put in a pre-motion letter. I followed up with the Court by calling a few times. I was told no other papers should be put in by me. There were papers put in by, there were letters put in by the other parties. The parties were already in the case. I was told do not put in any more letters. If the judge wants oral argument, the judge will let you know. And I think it was about a month after I first made contact with the Court that the judge issued his decision. And on page 62, there is language there that was particularly striking to me. It says, indeed, SAS does not deny such knowledge and yet offers no explanation for its delay in filing this motion to intervene, nearly two years after the original complaint was filed. And that struck me because I was given no opportunity to respond to anything that was put in in those other letters after I put in my initial letter. Let's say, arguendo, we were to agree with you that there were these various procedural concerns. We can affirm, can we not, on grounds the district court did not rely upon review of the record. Isn't that correct? If I understand your Honor's question, you can affirm that as a substantive matter, the Court found my motion untimely and therefore I'm not allowed to intervene. Is that your question? Yes, absolutely. And I'd like to get to that point.  Sure. The record reflects, it seems to me, that SAS had constructive notice of Griffin 2 when it was filed in July of 2017. Griffin 1, after all, had a lot of media coverage, which would establish constructive notice of that action. And you don't genuinely dispute that you had actual notice of Griffin 1 when it was filed. And so notice of Griffin 1, in turn, gives rise to constructive notice of Griffin 2, since the actions asserted the same claims against the defendants and were related. Well, let me respectfully challenge that, your Honor. First of all, there's nothing in the record that says we had notice of Griffin 2 being filed. And in fact, were we allowed to proffer, we would say we did not actually know that Griffin 2 was filed. The news articles that are referenced in opposing counsel's letter to then-District Judge Sullivan were about the first case. So I do not think that the fact that there had been a first case that we knew, we conceded, we knew it was filed, and we knew it had been voluntarily dismissed doesn't put us on notice that a second case was filed sometime later, I don't think. You were aware of the second suit since at least late 2017. By the time, no, we would proffer, and we put this in our reply brief, but again, there was no opportunity to proffer to this. We did not learn about it until late 2017, that there had even been a second suit. And at that point, I was not involved yet, but when one looks at the docket from that time period, the docket showed that the case had gone to mediation or was being sent to mediation, that it did not appear there was anything active going on from the docket. I personally did not get involved until 2018. I know that's not the issue here. But just from my own perspective, once we did get involved, we saw what we were able to see from the docket. We did not have access to the expert reports. We didn't know what was in them or what had been argued in them. So from a timeliness standpoint, we believe we were not untimely as such. In addition, we think that the timeliness has to be looked at in the context not of, it was mentioned that we knew we had a claim. Well, certainly. We knew we had the percentage ownership of the song from the beginning. So that is something we, of course, concede. But in terms of knowing that we had a case into which to intervene, I think is the key question. They would argue if the two years knowing about our claim is the standard, they would have argued that if we tried to intervene on day one of the second case, it also would have been untimely. I don't think that's the case. That would be a different set of facts. It would be a different set of facts. Absolutely. Could I ask you to help me understand how the denial of intervention prejudices you? Here, SAS's interests and Townsend's interests seem to be aligned. And no one disputes the other's alleged shares of Townsend's share of let's get it on. Isn't that correct? Well, that's correct. They're aligned in the sense that we both claim the same act of infringement. And we own different pieces of the infringed work. However, there are differences in the approach that the other plaintiffs have taken in their case that are on full display. In fact, in a different context last week, opposing counsel said the only thing these two cases have in common is the alleged infringement. There's a very different strategy being taken by plaintiff's counsel in the first case. And we do believe, even if it would not be collateral estoppel, and we don't believe it would be, but determinations in the first case are going to affect us as co-owners of the work, as just a practical matter, especially in the same court in front of the same judge. I point to the Lareau case from this court in 2016. The prejudice, within the timeliness factor, the prejudice is not about the impact that I'm going to have on the first case, that it will make the first case more difficult to litigate or more complicated to litigate. The question is, and this court said it in Lareau, it's about did my delay, my delay to intervene in the second case, did my delay prejudice them? And back when I tried to intervene, they made the point that they were closing out discovery. They wanted to move for summary judgment. And if I were allowed to intervene, it would throw the summary judgment off the rails. My intervention motion was denied. They moved for summary judgment. I believe it was still District Judge Sullivan at the time. Judge Stanton then ruled on it, and he denied summary judgment of non-infringement across the board, saying that the jury needs to address this, the jury needs to understand the two works, the jury needs to decide substantial similarity. There is nothing that my new facts that I would bring into the case, and I'll get to a very limited request as to what I would be allowed to do, but that my additional evidence that I would bring to the first case is not going to make their summary judgment posture better. The court has already found there are questions of fact that need to be decided, material questions of fact that need to be decided by the jury. Therefore, were I to intervene, it would not have impacted that summary judgment motion in a way that would have let them prevail on summary judgment. They're now past that summary judgment motion. I can't imagine them making another one. Going back to our very first letter, our only letter to Judge Sullivan, we had said we wanted to intervene, but we wanted to do it as quickly as possible and with very limited additional discovery. Specifically, we were going to take the fact discovery that had already been conducted, we were going to take the parties as we found them, and we wanted to put in our own expert report as to the music issues and an expert report on damages because plaintiffs in that case had strategically decided not to put in an expert report on damages. That was our ask, and we said that we could get our expert reports out very quickly. We put specific timelines in the letter. Judge Sullivan used his discretion and denied those. But again, looking back at the prejudice that they would have felt, it would not have affected their summary judgment motion. It didn't because they've already made it. As far as the prejudice to me, the prejudice to me and to my client is there's going to be this other case following a strategy that we do not agree with proceeding ahead of us that is absolutely going to have ramifications in the mind of the very judge who's sitting on both cases at a minimum about the merits of the case, and we wanted the full opportunity to do that. We do think that the court should not at this point send it back for a full determination. In the Richardson-Greenshields case that I cited from the circuit, it's a little bit older than the others. In that case, they said that the district judge had usurped the power by effectively not allowing an effective motion to be made, and at that point they said to send it back and have the motion be made would be wholly artificial at that point. We're in the same posture here. The bell can't be unrung. It's too late, but if we were . . . We still, to this day, even though we have a second case proceeding, our preference is to be in the first case, to have intervened in the first case with the additional discovery we asked for and to move forward to a trial. Explain exactly what you want from us. What is it that you . . . As I said in an earlier case, what's the decree to language? I'll do my best. We would like the district court's decision deeming our motion made and denying it vacated with instruction that we be allowed to intervene in the case and to allow us to take the limited additional discovery that we asked for, which is the . . . This case is ready for trial, apparently, right? This case is ready for trial, but it is not scheduled for trial until September. We asked for . . . We're going to put in our expert reports on the music, which are ready. Our expert reports on discovery, we need to . . . to run that report, but we are committed to doing it as quickly as possible. You're effectively, though, asking to reopen the fact and expert discovery in the case? We are not asking to reopen fact. We are asking to reopen expert. Thank you. Thank you. I think we're right on the brink of good morning and good afternoon. May it please the court, my name is Eileen Farkas. I'm from Prior Cashman and represent the Appellees, Sony ATV Music Publishing, Ed Sheeran, and Atlantic Records. The key issue on this appeal is whether the district court abused its discretion in denying intervention on a case that was first filed in 2016. The appellants do not take issue with the fact that they've known about the first case since 2016. They just seem to want to selectively choose what publicly filed events on the docket they knew about and which ones they didn't know about. But that is why courts in this circuit don't look at the subjective knowledge and subjective awareness of the proposed intervener. When the first case was dismissed or withdrawn, there was nothing to intervene in. So now we're talking about the second case, and when was he on notice for that one? Sure, but the first case did put them on constructive and actual notice, as they admit, that a claim had been brought. They then admit that they No longer in court. Sure, but then they admit that they knew about a second case being filed at least by the end of 2017. I would propose that they were on constructive notice that the second claim had been brought as well, given that they can't learn about a claim, know who the plaintiffs are, and then play ostrich and just say, well, how am I supposed to know? There's ample opportunity for them to know by a simple Google search or a Pacer search. But even if we were to just put them on constructive notice or even take them at their word, which we're not required to do, that they found out about Griffin II in late 2017, by that point, the case management plan had already been filed. It was a publicly filed document. That case management plan provided for an unusually early stipulated exchange of expert musicologist reports. And I want to take a moment to explain how important that is in this case. This isn't like damages expert reports that are just usually at the end of a case under the federal rules where you're arguing about the calculation of damages. These are expert musicologist reports that go to arguably the key issue in this copyright infringement case. It is there. It is the plaintiff's expert identifying, analyzing the two songs at issue, identifying what that expert believes are musical similarities between the two works, and dealing with the issues about whether those alleged similarities are original to the plaintiff's song. That is a key evidentiary issue. That is a key expert report that frames the case and frames fact discovery in the case. And because of that, the plaintiffs in the Griffin II case agreed to an early exchange. In fact, it was really the first thing that we did in this case to frame the issues. So under the publicly filed case management plan, the plaintiffs served their expert report in December 2017. My clients served their expert reports timely in January 2018. So by January 2018, based on a case that they admit they had knowledge about, the experts had framed the issues. Expert reports were closed because the parties did agree that no rebuttal expert reports would be provided by the plaintiffs. And the parties also agreed that all fact discovery would conclude a few months later, by March 2018, and that any other expert reports, whether it's damages or otherwise, plaintiffs would serve by April 2018, and summary judgment pre-motion letters would be by June 2018.  Absolutely. As of? As of October 2017. October. And in fact, it's in the record before this court as well. What's the view of other counsel on this question? Of the Griffin Plaintiffs' Counsel? Yes. Well, they're happy to have them intervene now because they realize that they see this as an opportunity to get an expert rebuttal report after discovery is closed, after all the depositions have been had, including expert depositions. And what's the prejudice exactly, other than arguable inconvenience to you? Well, and just so I can finish answering your question, it's not only reopening expert discovery upon which all discovery was had, it's also reopening fact discovery because the SAS appellant seeks to seek entirely new categories of damages, on touring, on merchandise, things that the Griffin Plaintiffs did not seek, and it's not simply a matter of just engaging in discovery. There would be motions undoubtedly directed towards both the damages that they seek, because we do not believe that a plaintiff is entitled to seek touring revenue or merchandising revenue as it's way too attenuated. There is the prejudice that could come our way should the court allow that to proceed and to allow the jury to hear factual issues that were never supposed to be before the court, and it's that we would have to be re-litigating essentially, potentially, the entire case, because we don't know what their expert's going to say, because despite the fact that his client has told us since August 2016 that he has an expert report ready to go for two years before he sought to intervene, we have yet to see it. So we're left to guess somewhat as to what actually would have to be litigated, but there's no question that we would have to serve a new expert report in order to respond to their expert report. We would have to take their expert's deposition. We would have to re-evaluate what potential additional defenses we have, what additional prior art we would need to research based on what hypothetical similarities they might identify. There's a lot. The other prejudice that could come to us, which it's— What would happen if you prevail here, you proceed to trial, what happens to their case in your view? Well, their case is proceeding. Then you wished to intervene in their case, right? I'm sorry, Your Honor? Would you wish to intervene in their case? Would I wish to— They filed a separate action. They have filed a separate action. You're the defendant in that case. So we are the defendant in that case. You are the defendant. Well, we are some of the defendants in that case. They have filed a separate action. We will have to do this anyway. That's correct. We will have to, but just so the record is clear here, the other case that they brought, not only have they named additional defendants, they seek to add six additional defendants in that case, four of which are based in the U.K., four of which they have yet to serve, and they obviously are pursuing all the different damages, discovery, et cetera. So the notion that these cases are, you know, the same, they're not, and they're seeking to greatly expand the issues in dispute in this case. Do we have any sense of what the plaintiff— are there any other parties in this second case which would expand that case in terms of parties? Are there other possible interveners lurking in midst of pawn in this case? Not that I'm aware of. There are co-owners of the copyright, the heirs of Marvin Gaye, who have known about this case from the get-go for now three years, and they've never sought to intervene. They don't seem to be particularly interested in it. Is there a case that you can point to, either published or unpublished, where the district court converted— where this court has approved of a district court converting a pre-motion request for a conference into a motion where the moving party didn't effectively have an opportunity to respond? Well, we have cited cases in our brief dealing with the letter motion due process issue. Standing here right now, I can't say whether any of them dealt with the specific issue about a reply, but let me just address that in a different way. There was a month between when they filed their initial letter and the judge decided—deemed the motion made and decided it. If they truly believed that we had misrepresented a fact or there was some fact that we had incorrectly stated that needed to be brought to the court's attention, they had ample opportunity to seek leave to do so. They also have their appeal briefs here. They have yet to proffer anything to this court that would have any bearing on the decision on intervention, much less show that Judge Sullivan abused his discretion. There is— I thought that they say that there are additional arguments that they would have made. Well, they have yet to articulate them, and I don't think anything would change the simple fact that where you have a case first filed in August 2016, you have the second case filed in July 2017, you have them admitting that they knew about the case shortly thereafter, you have a publicly filed case management plan in October, and the simple fact is that discovery had closed and experts had been exchanged and dealt with at the time that they sought to intervene. In and of itself, there's absolutely nothing that I can think of that could possibly change the fact that Judge Sullivan did not abuse his discretion, given the facts in this case. How would you respond to the argument that with respect to Pullman's telephone conversations with defense counsel and another attorney, that these conversations are unsworn statements and not evidence? I think I have three responses to that. One is that it's not hearsay because we're not offering it for the truth of what was said. We're simply offering it to show that these conversations took place, and these are conversations simply to show that Mr. Pullman, the fact that he did contact defendant's counsel and did discuss the case. We're not talking about the merits of his claim. We're not talking about whether or not he was truthful in saying that he had an expert report at the time or that he was thinking of intervening. It's simply his general awareness that the fact that these conversations took place is not hearsay. Second of all, you can ignore all of these conversations if you want. In fact, Judge Sullivan really did. He didn't rely upon these conversations in denying intervention. He relied upon publicly available information, publicly filed cases, what was on the public document. He did rely on and he did certainly mention those unsworn statements in denying the motion. It's unclear. He did say, because I've read it several times, he did say, he says, I'm sure you have, he said that SAS is a sophisticated party that according to defendants was aware of this dispute and its interest in this litigation at least as early as 2016. To me, to say according to defendants could simply mean that we pointed out that it was available in the publicly available docket and that we pointed to press. That is constructive knowledge. And again, courts of this circuit have repeatedly held that it's objective criteria, not what they say they knew because they could always deny it. You look at what was publicly available and should they be held to the fact that based on the publicly available docket and the press that widely reported on it that they knew. That's really the only place that I see a possible reliance upon those statements. And again, I don't think that he necessarily considered it. I think you can ignore them and absolutely reach the same result. And I also think it's quite telling that they to this day still don't deny that those conversations occurred. Thank you. I'll try to be brief, but I wanted to clean up a few things. So in no particular order, because I want to make sure I hit all of them. On page A7 of the record, you will see the docket . . . On what page? 7. 7. You will see the docket from the second Griffin case. And you will see that on October 9th, 2017, at docket entry 32, the case management and scheduling order was entered. The very next thing, except for two filing errors, is a mediation referral order. So yes, were we looking at the case management . . . were we looking at the docket at the time? Explain to me why that matters. Well, again, if one looks at . . . People try and settle cases all the time. Mediation is ordered. I mean, the litigation is still alive. The mediation may fail. Why does that matter? I agree with you. And again, to be clear, I'm not saying that I looked at the docket at the time. A, and B, why wouldn't you want to be part of the mediation? That's a very good question. The answer is my client, given the opportunity, would proffer he didn't know about it. He didn't know there had been a new case that was filed. And we certainly think that Judge Sullivan . . . did accept the representations of counsel as true . . . and relied on those representations as true . . . to bolster his conclusion that he didn't need to hear from us . . . and that intervention had to be denied and that it was untimely. But again, as I pointed out in my brief, even the things that counsel says happened . . . related to the first case. The press that they cite is from the first case. Judge Sullivan then cites it himself. But it's press about the first case. There's nothing in the record saying that the second case was widely publicized. If he had wanted to, I suppose he could have cited public articles about the second case. But he didn't. He cited the articles about the first case that Mr. Zacharin had put in his letter before. In addition, he . . . What prompted you to write the letter to Judge Sullivan saying you wanted to intervene? What prompted me was we learned of the case, saw . . . started learning about how it was proceeding. We weren't in the loop on anything, but we started talking to the plaintiff's counsel in that case . . . as to what they were doing and where they were going with it. And my client, again, mostly before he even contacted me . . . started finding counsel to represent him and then intervene in the case . . . because he felt that . . . Is it a matter of record as to when you had those discussions? As to when we had the discussions with the plaintiff. Not in this record. I certainly could dig it up if the Court was interested. But, I don't know when those conversations took place standing here. Were they right away? I mean, just shortly before? Or were they over a period of time? Well, I can tell you, and again, I'm going from memory here. I did not meet my client probably until late March or early April of 2018. And my letter was May 11th. And that was after several calls that I made to see if I could get consent to intervene. And when the answer came back that they would not consent . . . that's when I wrote the letter on May 11th. So, anyway, I wanted to just point out in A7 that one looking at the docket . . . would not see any activity, one way or the other . . . but any activity to speak of to understand where things were going. A44, I wanted to point out, was my letter, which I'm sure you've seen. My letter in which, on the first page of my letter . . . I'm sorry, it's May 10th, not May 11th. I speak exactly about what we were looking for there. And I say, all deadlines regarding fact discovery to remain unchanged . . . and all deadlines regarding expert discovery to remain unchanged . . . with the following exception. And I describe the exception. Many of the things that Ms. Farkas mentioned now about how we are expanding the scope . . . are in the other case, which I absolutely have to do . . . because I can't count on Your Honors granting the relief I'm seeking here. If I don't get the relief I'm seeking here, I need to make the most of the other case that I can. If you do grant me the relief that I'm seeking here, that is our preference. Our preference is to have been in the first case, taking it as it was. We would rather participate and limit ourselves . . . in the manner that we specifically asked for . . . than bring a full-blown case without any limitations. That's our preference or remains our preference. So, the references that Ms. Farkas made about adding defendants, that's true. We are trying to add defendants in the second case. That's another strategy that we differ from plaintiff's counsel in the Griffin case on. We have the freedom to do it in our second case. We don't have the freedom to do it in the first case. Well, we have nothing to do in the first case, but we have under our request. We would not be able to add parties. We would not be able to add fact discovery. So, that's what's happening over there. Can you conclude your rebuttal? It's three minutes over. Absolutely. I would just say in response to the question that was posed to Ms. Farkas about . . . what was done to my client here on the same sort of posture, I haven't found one either. What I did find is that the Laura Lee case, which I cite from this court in 2015 . . . and the Richardson-Greenshields case from 1987, both of which I cite. In both of those cases, it was found that the application of the individual rules . . . and the pre-motion process and deeming things. It wasn't that those rules are wrong, but the application of them. In one case, it was called a Hobson's choice. And, in the other case, it was called the usurpation of power. And, I would refer the court back to those two cases. And then also, in the Laureau case and the Katz case . . . both of those cases found that in the intervention context specifically . . . because of the short shrift that had been given by the court below . . . the Second Circuit, when it got to those cases, had insufficient facts to make any kind of determination. I think the same thing applies here as well. Thank you. Thank you, Your Honor. Thank you both for your arguments. The court will reserve decision. The final case on the calendar, Zappin, is on submission. The clerk will adjourn court. Court is adjourned.